**2014-1145**

IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

VERSATA DEVELOPMENT GROUP, INC.,
*Plaintiff-Appellant,*

v.

MICHELLE K. LEE, DEPUTY DIRECTOR, U.S. PATENT AND
TRADEMARK OFFICE,
*Defendant-Appellee.*

SAP AMERICA, INC. & SAP AG,
*Defendants-Appellees.*

Appeals from the United States District Court for the Eastern District of Virginia in
case no. 1:13-CV-00328-GBL-IDD, Judge Gerald Bruce Lee.

## CORRECTED BRIEF OF PLAINTIFF-APPELLANT
## VERSATA DEVELOPMENT GROUP, INC.

Mike McKool, Jr.
Daniel L. Geyser
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

R. Danny Huntington
Nancy J. Linck
Martin M. Zoltick
ROTHWELL FIGG ERNST &
MANBECK PC
607 14th Street, NW, Suite 800
Washington, DC 20005
(202) 783-6040

Scott L. Cole
*Principal Counsel*
Pierre Hubert
Joel L. Thollander
Gretchen Curran
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700

*Attorneys for Plaintiff- Appellant
Versata Development Group, Inc.*

February 03, 2014

# CERTIFICATE OF INTEREST

Counsel for Versata Development Group, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

Versata Development Group, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Versata Development Group, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Versata Development Group., Inc. is a wholly owned subsidiary of Versata Enterprises, Inc.; and Versata Enterprises, Inc. is a wholly owned subsidiary of Trilogy, Inc.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**MCKOOL SMITH, P.C.:** Mike McKool, Jr., Scott L. Cole, Pierre Hubert, Joel L. Thollander, Daniel L. Geyser, Gretchen Curran

**ROTHWELL FIGG ERNST & MANBECK PC:** R. Danny Huntington, Nancy J. Linck, Martin M. Zoltick, Derek Dahlgren

i

# TABLE OF CONTENTS

I.      STATEMENT OF JURISDICTION ................................................1

II.     STATEMENT OF THE ISSUES ..................................................1

III.    STATEMENT OF THE CASE ....................................................2

        A.    The Original Eastern District of Texas Patent
              Infringement Litigation ...............................................3

        B.    The Underlying Post-Grant Review Proceeding at
              the PTO..................................................................4

        C.    The Administrative Procedure Act Litigation in the
              District Court ..........................................................6

IV.     SUMMARY OF ARGUMENT ....................................................8

V.      ARGUMENT....................................................................10

        A.    Standard of Review ..................................................10

        B.    The AIA Does Not Preclude APA Judicial Review
              of the PTO's Statutory Construction of Its
              Jurisdiction to Conduct AIA Post-Grant
              Proceedings ...........................................................12

              1.    The AIA Does Not Expressly Preclude APA
                    Judicial Review of the PTO's Statutory
                    Construction of Its Jurisdiction to Conduct
                    AIA Post-Grant Proceedings...................................12

              2.    The AIA Statutory Scheme, as a Whole,
                    Does Not Preclude APA Judicial Review of
                    the PTO's Statutory Construction of Its
                    Jurisdiction to Conduct AIA Post-Grant
                    Proceedings. .................................................17

        C.    The PTO's Statutory Construction of its
              Jurisdiction to Conduct AIA Post-Grant
              Proceedings Was a "Final Agency Action, and One

for Which There is No Other Adequate Remedy in
a Court." ............................................................................20

    1.    The PTO's Statutory Construction of Its
Jurisdiction Was a "Final Agency Action" or
Pure Question of Law Appropriate for APA
Review. ..................................................................20

    2.    If the District Court Were Incorrect in
Assuming That This Court Will Review
Versata's Challenges in the Direct Appeal,
then the PTO's Statutory Construction of Its
Jurisdiction Was an Action "For Which
There is No Other Adequate Remedy in
Court."....................................................................25

VI.    CONCLUSION AND RELIEF REQUESTED...........................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)..................................................................11, 21, 24

*Alaska Dep't of Envtl. Conservation v. EPA*,
540 U.S. 461 (2004)...................................................................23

*Am. Airlines, Inc. v. Herman*,
176 F.3d 283 (5th Cir. 1999) ...................................................21

*Bennett v. Spear*,
520 U.S. 154 (1997)..............................................................21, 22, 24

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984)..................................................................11

*Bowen v. Mich. Acad. of Family Physicians*,
476 U.S. 667 (1986)..................................................................19

*Callaway Golf Co. v. Kappos*,
802 F. Supp. 2d 678 (E.D. Va. 2011) ......................................16

*Cooper Techs. Co v. Dudas*,
No. 07-853, 2007 WL 4233467 (E.D. Va., Nov. 30, 2007) ..............16

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ...................................................11

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
266 F. Supp. 2d 1101 (N.D. Cal. 2003)....................................25

*Estes Express Lines v. United States*,
No. 2013-5056, 2014 U.S. App. LEXIS 65 (Fed. Cir. Jan. 3, 2014) ................10

*Ft. Sumter Tours, Inc. v. Andrus*,
564 F.2d 1119 (4th Cir. 1977) .................................................21

iv

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009)...........................................................25

*Heinl v. Godici,*
    143 F. Supp. 2d 593 (E.D. Va. 2001) ....................................21, 24, 25

*Juniper Networks, Inc. v. Shipley,*
    643 F.3d 1346 (Fed. Cir. 2011) .........................................................10

*Pregis Corp. v. Kappos,*
    700 F.3d 1348 (Fed. Cir. 2012) ............................................10, 18, 19

*Sackett v. EPA,*
    132 S.Ct. 1367 (2012).........................................................................11

*SAP Am., Inc. v. Versata Software, Inc.,*
    No. 13-716, 2014 U.S. LEXIS 715 (U.S. Jan. 21, 2014) .....................4

*Semiconductor Energy Lab. Co. v. Nagata,*
    706 F.3d 1365 (Fed. Cir. 2013) .........................................................10

*Versata Software, Inc. v. SAP Am., Inc.,*
    717 F.3d 1255 (Fed. Cir. May 1, 2013) ...............................................3

# TABLE OF ABBREVIATIONS

*Parties*

| | |
|---|---|
| Versata | Plaintiff-Appellant Versata Development Group, Inc. |
| Director | Defendant-Appellee Michelle K. Lee, Deputy Director, U.S. Patent and Trademark Office, formerly Teresa Stanek Rea, Acting Director of the U. S. Patent and Trademark Office |
| SAP | Defendants-Appellees SAP America, Inc. & SAP AG |

*Cites*

| | |
|---|---|
| JA__ | Joint Appendix at page(s) __ |

*Terms*

| | |
|---|---|
| PTO | United States Patent and Trademark Office |
| AIA | Leahy-Smith America Invents Act |
| PTAB | Patent and Trademark Appeals Board |
| APA | Administrative Procedure Act |
| the '350 Patent | U.S. Patent No. 6,553,350 |

## STATEMENT OF RELATED CASES

Pursuant to Fᴇᴅ. Cɪʀ. R. 47.5, Plaintiff-Appellant Versata Development Group, Inc. notes that:

This appeal is related to another appeal currently pending in this Court—*Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194.

This appeal is also related to *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013) (Chief Judge Rader, Circuit Judges Prost and Moore), *cert. denied* (U.S., No. 13-716, January 21, 2014).

## I.    STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 1361, 2201, and 2202 and 5 U.S.C. §§ 701–706.  Final judgment was entered on October 5, 2013. JA00027. Versata Development Group, Inc. timely filed a notice of appeal on December 2, 2013. JA00036. This Court has jurisdiction under 28 U.S.C. § 1295.

## II.    STATEMENT OF THE ISSUES

Versata acknowledges the possibility that the present appeal may be mooted if this Court addresses the underlying disputes regarding the PTO's statutory construction of its AIA jurisdiction in the co-pending direct appeal from the PTAB decision, *Versata Dev. Group, Inc. v. SAP Am.*, *Inc.*, No. 14-1194. Indeed, the assumption of such review in Versata's direct appeal figured prominently in the district court's analysis and judgment in this case. JA00022–23. Nevertheless, in the meantime, and out of an abundance of caution, Versata pursues its APA-based claims in the present appeal, and states the following issues:

1.    Whether the district court erred in finding a lack of subject matter jurisdiction and/or dismissing Versata's APA claims for failure to state a claim on the basis that the AIA precludes APA judicial review of the PTO's statutory construction of its jurisdiction to conduct certain AIA post-grant proceedings.

2.    If the district court was incorrect in assuming that this Court would

review Versata's statutory challenges to the PTO's jurisdiction in Versata's direct appeal from the PTAB's decision (that is, the related co-pending appeal to this Court, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194), then, whether the district court erred in finding a lack of subject matter jurisdiction and/or dismissing Versata's APA claims for failure to state a claim under the APA on the basis that the PTO's statutory construction was not "final agency action for which there is no other adequate remedy in a court" under the APA.

## III. STATEMENT OF THE CASE

On March 13, 2013, Plaintiff-Appellant Versata Development Group, Inc. ("Versata") instituted an action in the U.S. District Court of the Eastern District of Virginia under the Administrative Procedure Act ("APA") because Defendant-Appellee, the United States Patent & Trademark Office ("PTO"), exceeded its statutory authority by allowing Defendant-Intervenors SAP America, Inc.'s & SAP AG's (collectively "SAP") Petition for the transitional post-grant review of Versata's U.S. Patent No. 6,553,350 ("the '350 Patent") to proceed in the first place. JA02000–11. The first instance of overreaching was the PTO's expansive interpretation of "covered business method patent" under § 18 of the America Invents Act ("AIA") to mean anything that relates in any way to money. The second instance of overreaching was the PTO's determination that § 101 is a permissible ground for challenging a patent under 35 U.S.C. § 321(b). The district

court erred by dismissing Versata's APA complaint for lack of subject matter jurisdiction and failure to state a claim. JA00001–24.

## A. The Original Eastern District of Texas Patent Infringement Litigation

The dispute between Versata and SAP over the '350 Patent began in 2007 when Versata sued SAP in the U.S. District Court for the Eastern District of Texas for patent infringement. JA02002. After the first trial, a jury found that SAP had failed to prove any asserted claims of the '350 Patent were invalid, and that SAP infringed. *Id.* SAP then issued a software patch that, SAP alleged, eliminated future infringement. *Id.* The jury disagreed. *Id.* After a second trial, a jury found that SAP's post-patch software continued to infringe and awarded $345 million in damages. *Id.*

The district court in the Eastern District of Texas issued a judgment on September 9, 2011 upholding liability and damages, and awarding interest. JA02002-03. Separately, the court issued a permanent injunction against SAP's future infringement, which was stayed pending appeal. JA02003. On October 11, 2011, SAP appealed the final judgment regarding infringement, damages, and the injunction, but not validity. *Id.* This Court affirmed the district court's judgment on May 1, 2013, remanding only as to the scope of the injunction. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268–69 (Fed. Cir. May 1, 2013). SAP filed a combined motion requesting rehearing and rehearing *en banc* on May 31, 2013.

3

The Court denied SAP's motions for panel rehearing and rehearing en banc, denied SAP's motion for a stay of the mandate, and issued the formal mandate on August 21, 2013 in accordance with its May 1, 2013 judgment. SAP filed a petition for writ of certiorari on December 12, 2013, which was denied on January 21, 2014. *SAP Am., Inc. v. Versata Software, Inc.*, No. 13-716, 2014 U.S. LEXIS 715 (U.S. Jan. 21, 2014).

On the limited remand to the district court for the Eastern District of Texas, Versata filed a motion to dismiss its remaining claims for injunctive and equitable relief on grounds of mootness. Versata's motion was granted on January 21, 2014, and in light of the lack of ongoing case or controversy, the district court ordered, adjudged, and decreed its previous judgment final. *Versata Software Inc. v. SAP America, Inc.*, No. 2:07-CV-00153-RSP (E.D. Tex. Jan. 21, 2014) (D.I. 596).

### B.    The Underlying Post-Grant Review Proceeding at the PTO

On September 16, 2012—more than a year after the district court's judgment in Eastern District of Texas—SAP filed a petition with the PTO to institute a transitional post-grant review of the '350 Patent under § 18 of the AIA. JA02057–134. Section 18 provides for post-grant review of any "covered business method patent," which is defined as "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service …." § 18(d)(1).

4

Transitional post-grant reviews are held before the Patent Trial and Appeal Board ("PTAB"). SAP's petition raised arguments that SAP advanced and lost in the Texas litigation, including the allegations that claims 17, 26–29 of the '350 Patent are unpatentable based on 35 U.S.C. §§ 101, 102, and 112. JA02080-124.

Versata challenged the merits of SAP's petition in a Patent Owner Preliminary Response under 37 C.F.R. § 42.207. JA02136–227. Because the Patent Owner Preliminary Response allows the patent owner to present any argument as to "why no post-grant review should be instituted," Versata also challenged the PTO's overly expansive interpretation of its authority regarding the definition of "covered business method patents" reviewable under § 18, as well as the PTO's authority to consider post-grant review challenges under 35 U.S.C. § 101. JA02155–56; JA02176–90.

On January 9, 2013, the PTO instituted a review of the '350 Patent under §§ 101 and 102. JA02229–72. In response to Versata's arguments that the '350 Patent does not qualify as a "covered business method patent," the PTO stated:

> We do not interpret the statute as requiring the literal recitation of the terms financial products or services. The term financial is an adjective that simply means relating to monetary matters. This definition is consistent with the legislative history for Section 18, which explains that the definition was intended to encompass patents claiming activities incidental and complementary to a financial activity.

JA02251. The PTO likewise rejected Versata's arguments that the plain language of the AIA does not authorize review of challenges under § 101. JA02260.

5

On March 11, 2013, Versata filed its Patent Owner Response pursuant to 37 C.F.R. § 42.220, which only permits arguments regarding "any ground for unpatentability not already denied." JA02836–930. On June 11, 2013, the PTO issued its Final Written Decision pursuant to 37 C.F.R. § 42.73, holding that claims 17 and 26–29 of Versata's '350 Patent are unpatentable under § 101. JA02932–69. On July 11, 2013, Versata filed its request for rehearing pursuant to 37 C.F.R. § 42.71(d) (JA03165–187), where it argued, *inter alia*, that the PTAB misapprehended or overlooked that the '350 Patent is not a "covered business method patent" and that § 101 is not a permissible basis for review. JA03172–74. On September 13, 2013, the PTO denied Versata's request for rehearing. JA03188–96. On November 13, 2013, Versata filed with this Court its appeal of the PTO's September 13, 2013 denial of Versata's request for rehearing—that appeal is pending as *Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194.

### C. The Administrative Procedure Act Litigation in the District Court

On March 13, 2013, while the post-grant review proceeding was still in the PTAB, Versata instituted an action in the district court for the Eastern District of Virginia challenging the PTO's statutory authority based on its interpretation of "covered business method patent" under AIA § 18 and its determination that § 101 is a permissible ground for challenging a patent under § 321(b). JA02000–274. Versata had presented these jurisdictional challenges in its Patent Owner

Preliminary Response under 37 C.F.R. § 42.207 (JA02136–227) and request for rehearing under 37 C.F.R. § 42.71(d) (JA03165–87), the only places that the PTO's rules allow such issues to be presented. *See* 37 C.F.R. § 42.220.

In response, the PTO filed a motion to dismiss on May 16, 2013 based on FED. R. CIV. P. 12(b)(1) and (6). JA02326–594. SAP filed a motion to dismiss under FED. R. CIV. P. 12(b)(1) on the same day.[1] JA03073–94. Both argued that Congress precluded APA review of Versata's claims, and that the PTO's decision with respect to the meaning of "covered business method patent" and its jurisdiction over § 101 challenges is not a final agency action reviewable under the APA. The parties briefed these motions, and a hearing was conducted before the district court on July 12, 2013. JA02669–3054; JA03056–72; JA03095–116; JA03117–18. The court granted the motions to dismiss, noting at a critical juncture of its analysis that, upon the direct appeal of the PTO's Final Written Decision to this Court, the record would include Versata's "written and oral appeals to the PTAB regarding the PTAB's interpretation of 'covered business method,'" and that "nowhere is it indicated that the Federal Circuit will refuse to consider the entire administrative record. *See* 35 U.S.C. § 144." JA00023.

---

[1] Although SAP filed its motion to dismiss on May 16, 2013, because its Motion to Intervene had not yet been granted, the document was not technically "filed" until July 3, 2013.

Versata filed a motion to alter judgment pursuant to FED. R. CIV. P. 59(e) on September 4, 2013, arguing, *inter alia*, that the district court erred as a matter of law by using the incorrect standard to determine congressional intent under the APA and by finding that there is no exception to the final agency action rule when a pure question of law raises an attack on an agency's jurisdiction. JA03119–26. The court denied that motion on October 5, 2013. JA00025–27.

Versata accordingly filed this appeal on December 2, 2013. JA00036–37.

## IV.   SUMMARY OF ARGUMENT

As an initial matter, Versata acknowledges the possibility that the present appeal may be mooted if this Court addresses disputed issues regarding the PTO's statutory construction of its AIA jurisdiction in the co-pending direct appeal from the PTAB decision, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194, an appeal to which the district court below alluded. JA00022–23. Nevertheless, in the meantime, and out of an abundance of caution, Versata hereby appeals from the district court's dismissal of Versata's APA-based claims as follows.

First, the district court erred in dismissing Versata's APA claims for lack of subject matter jurisdiction and/or failure to state a claim under the APA on the purported basis that the AIA precludes APA judicial review of the PTO's statutory construction of its jurisdiction to conduct AIA post-grant proceedings. Congress did not expressly preclude judicial review of the PTO's statutory construction of its

8

AIA jurisdiction, and the AIA statutory scheme as a whole also does not preclude judicial review. In short, nothing in the AIA expressly or implicitly precludes judicial review in these circumstances.

Second, if the district court were incorrect in assuming that Versata would secure review in its direct appeal from the PTAB's final decision, then the court also erred in dismissing Versata's APA claims for lack of subject matter jurisdiction and/or failure to state a claim under the APA on the purported basis that the PTO's statutory construction was not a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. That phrase from the APA statute has two parts—"final agency action," and "for which there is no other adequate remedy in a court." *Id.*

The PTO's statutory construction of its jurisdiction was a "final agency action" in that it represented the PTO's final position on its statutory construction of its jurisdiction, in excess of its statutory authority, which created a final and direct harm on Versata. Further, the PTO's statutory construction of its jurisdiction was a pure question of law appropriate for APA review.

The PTO's statutory construction of its jurisdiction also was an action "for which there is no other adequate remedy in a court"—*unless*, again, this Court determines that Versata can secure review of these decisions in its direct appeal from the PTAB's final decision. As noted, Versata agrees with the district court's

9

premise that Versata can and will secure review of the PTO's statutory construction of its jurisdiction in its direct appeal from the PTAB decision. But until this Court provides that review in the direct appeal in this case of first impression,[2] Versata maintains its APA-based claims to preserve its rights.

## V.    ARGUMENT

### A.    Standard of Review

This Court reviews *de novo* a district court's grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1368 (Fed. Cir. 2013). Similarly, this Court reviews *de novo* a district court's dismissal of APA claims against the PTO for lack of subject matter jurisdiction. *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354 (Fed. Cir. 2012). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, No. 2013-5056, 2014 U.S. App. LEXIS 65, at *5 (Fed. Cir. Jan. 3, 2014).

This Court reviews a district court's dismissal for failure to state a claim under the law of the regional circuit. *Juniper Networks, Inc. v. Shipley*, 643 F.3d

---

[2] This is the first case in which an APA action has been filed challenging the PTO's jurisdiction under the AIA's new post-grant review proceedings.

1346, 1350 (Fed. Cir. 2011). The Fourth Circuit Court of Appeals reviews *de novo* dismissals for failure to state a claim under Rule 12(b)(6), accepting all properly pled factual allegations in the complaint as true and construing all facts in the light most favorable to the plaintiff. *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 752 (4th Cir. 2013).

"[T]o preclude judicial review … a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 n.2 (1967). The clear and convincing evidence standard, while not a rigid evidentiary test, is "useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984); *see also Sackett v. EPA*, 132 S.Ct. 1367, 1373 (2012) (same). Indeed, in passing the APA, the Senate Committee on the Judiciary remarked:

> Very rarely do statutes withhold judicial review. It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board.

S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

**B.    The AIA Does Not Preclude APA Judicial Review of the PTO's Statutory Construction of Its Jurisdiction to Conduct AIA Post-Grant Proceedings.**

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Judicial review is unavailable, however, when the relevant statute expressly precludes it. 5 U.S.C. § 701(a)(1)(a) ("[t]his chapter applies, according to the provisions thereof, except to the extent that … statutes preclude judicial review"). Applying this provision of the APA, the district court dismissed Versata's APA claims for lack of subject matter jurisdiction and/or failure to state a claim because, according to the district court, "the AIA's express language and its detailed scheme for administrative and judicial review evince Congress's clear intent to preclude subject matter jurisdiction in federal district court." JA00008. The district court erred in dismissing Versata's APA claims on this basis.

**1.    The AIA Does Not Expressly Preclude APA Judicial Review of the PTO's Statutory Construction of Its Jurisdiction to Conduct AIA Post-Grant Proceedings.**

The district court, quoting § 324(e), held that "the express language of the [AIA] statute indicates Congress's intent to preclude judicial review of a PTAB decision to institute post-grant proceedings." JA00010; 35 U.S.C. § 324(e) ("The determination by the Director whether to institute a post-grant review under this

12

section shall be final and nonappealable."). Contrary to the district court's conclusion, however, when § 324(e) is viewed in context of the statute—as it must be—its plain language does not preclude Versata's APA claims.

Providing the antecedent basis for § 324(e), the earlier § 324(a) states that the Director may authorize a post-grant review only where "*the Director determines* that the information presented in the petition … would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a) (emphasis added). In a clear reference back to the language of § 324(a), § 324(e) states that "[t]he *determination by the Director* whether to institute a post-grant review *under this section* shall be final and non-appealable." *Id.* § 324(e) (emphases added). Thus, simply put, the "final and nonappealable" language of § 324(e) means that an immediate appeal to this Court is not available for the *substantive* threshold determination "that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable" made under *§* 324. *Id.* §§ 324(a), (e). Section 324(e) expressly states that it is limited to determinations under *that section*. Thus, § 324(e) does not preclude review of determinations under *other sections*, such as §§ 321(b) and 18(d).

Hence, Versata's APA claims should have been decided with respect to the PTO's authority to institute this review.

Section 321(b) of the AIA sets forth what grounds support a review petition. In the case of Versata's '350 Patent, the PTO instituted a review of the '350 Patent under §§ 101 and/or 102.[3] While § 321(b) permits a post-grant challenge based on § 102, it does not permit a post-grant challenge based on § 101.[4] *Id.* § 321(b). Versata should thus be allowed to raise its APA claims and seek review of the PTO's statutory construction of its jurisdiction to determine whether a § 101 challenge is available under 35 U.S.C. § 321(b).

Versata also should be allowed to raise APA claims with respect to the PTO's statutory construction of § 18(d) of the AIA, relating to "covered business method patents." Section 18 is clear on its face that it is only available for "covered business method patents," and it provides a definition for such patents:

> a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service,

---

[3] Following the PTO's decision to institute review, SAP dropped its challenge under § 102 in order to proceed under § 101 on an expedited basis. SAP then filed an *ex parte* reexamination request regarding the '350 Patent on the same grounds that it agreed to drop in the transitional post-grant review. The PTO declined to stay the *ex parte* reexamination in its Final Written Decision. JA02965.

[4] *See* 35 U.S.C. § 321(b) ("on any ground that could be raised under paragraph (2) or (3) of section 282(b) (relating to invalidity of the patent or any claim)"); *id.* § 282(b)(2)–(3) (invalidity on any ground specified in part II as a condition of patentability, § 112, or § 251). Part II specifies only two sections as providing "conditions of patentability"—§§ 102 and 103. There is no statutory support, therefore, for post-grant reviews challenging a patent under 35 U.S.C. § 101.

14

except that the term does not include patents for technological inventions.

AIA § 18(d)(1). Because the '350 Patent does not qualify as a "covered business method patent" under this definition, the PTO exceeded its statutory authority by accepting SAP's challenge to the '350 Patent's validity. In fact, in response to Versata's arguments that the '350 Patent was outside the scope of a post-grant review, the PTO set forth an overly expansive view of what constitutes a "covered business method patent":

> We do not interpret the statute as requiring the literal recitation of the terms financial products or services. The term financial is an adjective that *simply means relating to monetary matters*.

JA02251 (emphasis added). Hence the PTO interpreted the definition of "covered business method patent" so as to omit the plain language of § 18(d).

The foregoing establishes that the district court erred in refusing to consider Versata's jurisdictional claims. 35 U.S.C. § 321(b) and AIA § 18(d) simply do not support the PTO's jurisdiction; the PTO acted *ultra vires* in issuing its Institution Decision and then proceeding without statutory authority.

Further, although there is a dearth of precedent interpreting the AIA, it is worth noting that the *inter partes* reexamination statute (though establishing different proceedings for different purposes) contains almost identical "nonappealable" language to that found in the post-grant review statute. *Compare* 35 U.S.C. § 324(e) ("The determination by the Director whether to institute a post-

15

grant review under this section shall be final and nonappealable") *with* old 35 U.S.C. § 312(c) ("A determination by the Director under subsection (a) shall be final and non-appealable."). And courts interpreting the *inter partes* reexamination statute have rejected the view that all determinations involved in a decision to initiate reexamination are not reviewable by district courts. *See, e.g.*, *Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 685 (E.D. Va. 2011) (discussing similar language in the *inter partes* reexamination statute and noting "Section 312(c) only exempts from judicial review the PTO's substantive determination that a reexamination application raises 'a substantial new question of patentability.' The statute *does not* divest the courts of jurisdiction over all decisions related to *inter partes* reexaminations.") (emphasis added); *see also Cooper Techs. Co v. Dudas*, No. 07-853, 2007 WL 4233467, at *3 (E.D. Va., Nov. 30, 2007).[5]

This interpretation is also consistent with the Senate Committee on the Judiciary remarks on the passage of the APA in 1945, to the effect that "[i]t has never been the policy of Congress to prevent the administration of its own statutes

---

[5] *See also, e.g.*, H.R. Rep. No. 106-1554 (1999) (Conf. Report), 145 Cong. Rec. H11769, H11805 (Nov. 9, 1999) ("Similar to section 303 of existing law, new section 312 of the Patent Act confers upon the Director the authority and responsibility to determine, within three months after the filing of a request for *inter partes* reexamination, whether a substantial new question affecting patentability of any claim of the patent is raised by the request. Also, the decision *in this regard* is final and not subject to judicial review.") (emphasis added). The legislative history does not say that the decision is immune in *all* regards.

from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board." S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

For at least these reasons, the district court should have considered the merits of Versata's APA challenge to the PTO's jurisdiction. That jurisdiction is not supported by the PTO's erroneous statutory interpretations concerning the *types* of patents that may be challenged or the *grounds* upon which challenges may be based.

> **2.** **The AIA Statutory Scheme, as a Whole, Does Not Preclude APA Judicial Review of the PTO's Statutory Construction of Its Jurisdiction to Conduct AIA Post-Grant Proceedings.**

As another basis for its determination that the AIA precludes APA judicial review of the PTO's statutory construction of its jurisdiction, the district court cited "its detailed scheme for administrative and judicial review," (JA00008), and in particular, the detailed procedures for post-grant review set forth in Chapter 32 of the AIA and the appeal provisions of the AIA such as 35 U.S.C. §§ 141(c) and 329 ("Appeal") (JA00010–11). Neither the detailed scheme nor the detailed procedures, however, suggests the preclusion of APA review of the PTO's *ultra vires* actions through its statutory construction of its jurisdiction.

17

First, with respect to Chapter 32, the district court determined that the fact that "Chapter 32 provides detailed procedures for post-grant review and a detailed scheme of administrative and judicial review" suggests that "the AIA evinces clear congressional intent to preclude actions that seek intervention under the APA." JA00010. While the district court provides a laundry list of the various sections of Chapter 32, none of the detailed procedures outlined in Chapter 32 precludes the opportunity to challenge the PTO's authority to review patents under the controlling statutes. The existence of detailed procedures that do not address the issues raised by Versata in its APA challenge do not evince congressional intent to preclude APA review of the PTO's *ultra vires* action based on an erroneous construction of the controlling statutes.

Second, with respect to the appeal provisions of 35 U.S.C. §§ 141(c) and 329, the district court noted the designation of this Court as the court of review for decisions from the PTAB, and determined that they illustrate a "scheme and intent [to] preclude[] federal district court jurisdiction under the APA." JA00011 (citing *Pregis*, 700 F.3d 1359).

The district court's citation to *Pregis* might be appropriate—but only if this Court in fact hears Versata's jurisdictional challenges in its direct appeal from the PTAB's final decision (now the co-pending appeal, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194). *See*, *e.g.*, JA00022–23. However, if this Court

18

declines to review the PTAB's statutory construction of its jurisdiction in the co-pending direct appeal from the PTAB decision, then the district court's citation to *Pregis* is misplaced, because important jurisdictional issues based on statutory-construction questions will remain immune from challenge in any court, which is precisely what *Pregis* sought to avoid:

> The Patent Act thus presents several mechanisms by which third parties may challenge the PTO's decision to issue a patent, *unlike cases in which preclusion of a suit under the APA would leave an agency action entirely free from judicial review. Cf. Bowen*, 476 U.S. at 678 (holding "it is implausible to think [Congress] intended that there be *no* forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary" for the method by which Medicare Part B payments are calculated).

*See Pregis*, 700 F.3d at 1359 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 678 (1986)) (emphasis to "no" added in *Bowen*).

Further, both 35 U.S.C. §§ 141(c) and 329, cited by the district court, afford the party an opportunity to challenge the PTO's *final written decision* to this Court. 35 U.S.C. § 141(c) (authorizing an appeal of the PTO's decision under § 328(a) to the Federal Circuit); *id.* § 329 (authorizing an appeal to this Court). Versata anticipates that SAP may argue that the *final written decision* concerns only the PTO's substantive decision on the merits, and not its underlying jurisdictional conclusions that it had statutory authority to proceed to a substantive decision. Both the PTO and the district court rejected that argument in this case, and took the position that this Court would hear and address Versata's jurisdictional challenges

19

in the direct appeal under §§ 141(c) and 329. JA00023; JA02347. If the Court provides that review of the PTO's *ultra vires* actions, then at least these important jurisdictional issues will be addressed. If Versata, the PTO, and the district court are all wrong regarding the scope of appeal in the companion case, however—and the Court does not review Versata's jurisdictional challenges in the direct appeal— then those challenges should be addressed by the district court, and this Court should remand with appropriate instructions.

**C.    The PTO's Statutory Construction of its Jurisdiction to Conduct AIA Post-Grant Proceedings Was a "Final Agency Action, and One for Which There is No Other Adequate Remedy in a Court."**

The APA may provide judicial relief from an agency action that is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The district court erred in dismissing Versata's APA claims for lack of subject matter jurisdiction and/or failure to state a claim under the APA on the basis that the PTO's *ultra vires* actions based on its faulty statutory construction of §§ 321(b) and 18(d) were not "final agency action for which there is no other adequate remedy in a court." JA00017.

**1.    The PTO's Statutory Construction of Its Jurisdiction Was a "Final Agency Action" or Pure Question of Law Appropriate for APA Review.**

For agency action to lend itself to APA judicial review, it must be either a "final agency action," 5 U.S.C. § 704, or a pure question of law appropriate for

APA review, *see Abbott Labs.*, 387 U.S. at 149; *Heinl v. Godici*, 143 F. Supp. 2d 593, 603 (E.D. Va. 2001) ("[I]n limited circumstances, a plaintiff making a facial challenge to agency rules or regulations need not 'await a final agency action'").

To be "final," "the action must mark the consummation of the agency's decisionmaking process," and "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). A pure question of law also may be suitable for APA review. *Abbott Labs.*, 387 U.S. at 149; *see also Heinl*, 143 F. Supp. 2d at 603. The finality requirement is a flexible, pragmatic one. *Abbott Labs.*, 387 U.S. at 149; *Ft. Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1123 (4th Cir. 1977); *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). Here, however, the district court held that the PTO's statutory construction of its jurisdiction was neither a final agency action nor a pure question of law appropriate for review under the APA. The court was in error.

The district court held that the PTO's action was not "final" because the court erroneously focused on the PTAB's decision to engage in a post-grant review of the '350 Patent. JA00019–22. According to the district court, such a decision is not the consummation of the PTO's decisionmaking process—it is the commencement of that process (JA00018), and the decision did not result in the determination of any legal rights or obligations (JA00019).

The district court's reliance on the initiation of a post-grant proceeding was misplaced. Versata did not challenge the PTO's decision to engage in a post-grant review of the '350 Patent. Instead, Versata brought its APA claims based on the PTO's *statutory authority to conduct the review based on its erroneous construction of the underlying statute*—an action that marked the inappropriate consummation of the PTO's decisionmaking process, from which legal consequences will flow, and that had a direct and immediate effect on Versata's legal rights. *See Bennett*, 520 U.S. at 177–78.

The PTO determined that it had statutory authority to initiate the review because (1) a petitioner's challenge to a patent's validity in a post-grant review may be based on 35 U.S.C. § 101; and (2) a "covered business method patent" was not limited to the definition set forth in § 18 of the AIA. In doing so, the PTO acted *ultra vires* when it initiated review based on its erroneous construction of 35 U.S.C. § 321 and § 18 of the AIA—and such *ultra vires* action was completed when that construction took place. The completion of its action is evidenced by the fact that challenges under § 101 have been brought in the petitions for CBM2013-00008, 2013-00014, 2013-00015, 2013-00016, 2013-00017, 2013-00018, 2013-00019, 2013-00021, and 2013-00025. The PTO has continued to act *ultra vires* by consistently relying on its erroneous interpretation of 35 U.S.C. § 321 and the availability of § 101 challenges on transitional post-grant reviews. *See* JA02971–

22

86 at JA02980 ("Patent Owner asserts that § 101 is not available to challenge patentability in a covered business method review because it is not included in §§ 282(b)(2) or (3). We disagree."). Thus, the PTO's determination that post-grant reviews based on § 101 challenges to patent validity are available has become the PTO's definitive position.

Similarly, in response to Versata's argument that the '350 Patent does not fall within the definition of a "covered business method patent," the PTO responded that "[w]e do not interpret the statute as requiring the literal recitation of the terms financial products or services." JA02251. The PTO, therefore, "ha[s] asserted its final position" on those two issues. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004).

Legal consequences necessarily flow from the PTO's *ultra vires* actions based on its faulty statutory construction given that patents are being challenged based on § 101 (notwithstanding the plain language of 35 U.S.C. § 321), and that patents not falling within AIA § 18's definition of "covered business method patent" are being captured by the PTO's overly expansive view of the term. Based on the PTO's erroneous construction of 35 U.S.C. § 321 and § 18 of the AIA, the PTO took the position that the '350 Patent fell within its jurisdiction and was subject to a post-grant review. The final agency action of the PTO has determined Versata's substantive rights and obligations, and legal consequences flow from the

23

PTO's *ultra vires* action based on the PTO's faulty statutory construction that subjected the '350 Patent to post-grant review. *See Bennett*, 520 U.S. at 177–78.

Second, the PTO's statutory construction of § 321(b) to authorize § 101 as available grounds for a post-grant review and overly broad construction of "covered business method patent," regardless of how applied to the '350 Patent, are pure questions of law, well-suited to APA review. *Abbott Labs.*, 387 U.S. at 149; *see also Heinl*, 143 F. Supp. 2d at 603.

In certain circumstances, courts review pure questions of law even prior to receiving a final agency action under the APA. In *Hienl,* the patent owner argued that the PTO's grant of a second reexamination was *ultra vires* because the same catalog references were involved in the first reexamination, and thus the patent owner argued that no new question of patentability was raised. 143 F. Supp. 2d at 603. The court ultimately found that there was no *ultra vires* act because the question of patentability in view of the catalog references "was never reached or decided by the examiner in the [first] reexamination because the record was incomplete." *Id.* At 602. In so finding, however, the court noted that, "[h]ad the examiner made a finding or final determination in the '[first] reexamination that the four catalogs did not qualify as prior art or that the catalogs as prior art did not anticipate or render obvious the '691 Patent, then, in either such event, there would

24

be jurisdiction to proceed in this case under the *ultra vires* exception to the final agency action rule…" *Id.*at 602 n.16.

Here, Versata has challenged the PTO's misconstruction of §§ 321(b) and 18(d) as a matter of law, and asserted that the PTO has exceeded its statutory authority. Thus, if the PTO's actions were somehow construed to not be "final" within the meaning of the APA (they are final), this Court may still review the PTO's *ultra vires* actions based on its faulty constructions of the relevant statutes.

Because the PTO's statutory construction of its jurisdiction is both a final agency action and raises pure questions of law, it is not precluded from APA review under 5 U.S.C. § 704.

> **2.    If the District Court Were Incorrect in Assuming That This Court Will Review Versata's Challenges in the Direct Appeal, then the PTO's Statutory Construction of Its Jurisdiction Was an Action "For Which There is No Other Adequate Remedy in Court."**

A final agency action is reviewable under the APA where the petitioner has "no other adequate remedy in a court." 5 U.S.C. § 704. In "evaluating the availability and adequacy of alternative remedies," this Court "must give the APA a "hospitable interpretation." *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009). Alternative remedies to APA claims are inadequate if the statute at issue does not allow the petitioner to otherwise remedy an alleged wrong. *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 266 F. Supp. 2d 1101, 1111 (N.D. Cal. 2003).

Because the district court believed that Versata's challenges to the PTAB's statutory construction of its jurisdiction would be addressed by this Court in the related direct appeal, the district court found that Versata had an adequate remedy in a court. JA00022 ("Adequate remedies exist for [Versata] through direct appeal to the United States Court of Appeals for the Federal Circuit.").

Versata believes that the district court is correct in suggesting that if the PTO's final written decision is appealable to this Court, then this Court can and should review all of the underlying jurisdictional questions raised by Versata. If the district court is incorrect on this point, however, then it erred in dismissing Versata's APA claims, as they would then provide the sole remedy for Versata.

## VI.    CONCLUSION AND RELIEF REQUESTED

Versata acknowledges the possibility that the present appeal may be mooted if this Court addresses the disputed issues regarding the PTO's AIA jurisdiction in the co-pending direct appeal from the PTAB decision, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 14-1194. JA00022–23. But if this Court does not address the PTO's erroneous statutory constructions of its AIA jurisdiction in the co-pending appeal, then Versata requests that the Court reverse the district court's dismissal of Versata's APA claims and remand to the district court for consideration of the PTO's statutory authority to institute the review of the '350 Patent.

Date: February 3, 2014                    Respectfully submitted,


/s/ Scott L. Cole
Scott L. Cole
*Principal Counsel*
Pierre Hubert
Joel L. Thollander
Gretchen Curran
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700

Mike McKool, Jr.
Daniel L. Geyser
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000

R. Danny Huntington
Nancy J. Linck
Martin M. Zoltick
ROTHWELL FIGG ERNST &
MANBECK PC
607 14th Street, NW, Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Plaintiff-Appellant*
*Versata Development Group, Inc.*

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

VERSATA DEVELOPMENT CORP.,        )
                                  )
        Plaintiff,                )
                                  )
        v.                        )       Case No. 1:13-cv-328 (GBL/IDD)
                                  )
TERESA STANEK REA,                )
Acting Under Secretary of         )
Commerce for Intellectual Property and )
Acting Director of the United States   )
Patent and Trademark Office,      )
                                  )
        Defendant,                )
                                  )
SAP AMERICA, INC. & SAP AG,       )
                                  )
        Defendant-Intervenors.    )
                                  )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Teresa Stanek Rea's and Intervenors

SAP America, Inc. and SAP AG's Motions to Dismiss for lack of subject matter jurisdiction.

(Docs. 16, 39.) This case concerns the claims of Versata Development Group, Inc., by virtue of

the Administrative Procedure Act ("APA"), that the United States Patent and Trademark Office

("PTO"), through its Patent Trial and Appeal Board ("PTAB"), wrongly instituted post-grant

review of Plaintiff's claimed patent based on an improper interpretation of the America Invents

Act ("AIA"). The ultimate question here is whether a party whose patent is being reevaluated

under the AIA is entitled to judicial review of the agency decision to initiate a post-grant review

and reevaluate patent eligibility. There are two issues before the Court.

The first issue is whether the AIA precludes judicial review of the PTAB's decision to

institute post-grant review in accordance with the AIA. The Court holds that it lacks subject

matter jurisdiction over Plaintiff's claim because the AIA's express language, detailed structure and scheme for administrative and judicial review, legislative purpose, and nature of the administrative action evince Congress's clear intent to preclude subject matter jurisdiction over the PTAB's decision to institute patent reexamination proceedings. Therefore, Plaintiff's claims are dismissed for want of subject matter jurisdiction under the clear statutory guidance provided by the AIA.

The second issue is whether the PTAB's statutory interpretation regarding institution of post-grant review proceedings constituted a "final agency action" for which there is no other adequate remedy in a court, thereby providing Plaintiff a cause of action to bring challenge to such decision in this Court. The Court holds that the decision to institute post-grant review is merely an initial step in the PTAB's process to resolve the ultimate question of patent validity, not a final agency action as contemplated by 5 U.S.C. § 704. The decision to institute patent reexamination proceedings is not the consummation of an agency's decision making process, nor does it elicit rights or obligations, and Plaintiff retains an alternative adequate remedy through appeal to the Court of Appeals for the Federal Circuit. Therefore, as an alternative ground for dismissal, Plaintiff's challenge to the PTAB's decision to institute post-grant review is dismissed for failure to state a claim.

## I.    BACKGROUND

This matter arises generally from a patent infringement dispute between Plaintiff Versata Development Group, Inc. ("Versata") and Intervenors SAP America, Inc. and SAP AG (collectively "SAP"). Versata and SAP were involved in separate litigation arising out of Versata's claims of patent infringement by SAP concerning United States Patent No. 6,553,350 ("the '350 patent"), entitled "Method and Apparatus for Pricing Products in Multi-Level Produce

2

and Organizational Groups." Those proceedings resulted in a jury verdict for Versata and against SAP, which the Federal Circuit recently affirmed.

Pursuant to the recently-enacted Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 18, 125 Stat. 284, 329, 31 (2011), SAP filed a separate petition with the PTAB, arguing essentially that Versata's '350 patent constituted a "covered business method" and was therefore not patentable subject matter. Upon consideration of written arguments by both Versata and SAP, the PTAB issued a lengthy opinion instituting a post-grant review of Versata's '350 patent. The PTAB's post-grant review proceedings have included discovery, expert witnesses, and oral hearings. Versata filed the instant action prior to the PTAB's issuance of its final decision to ask this Court to conduct an interlocutory review of the PTAB's decision to institute post-grant review proceedings.

### The Underlying Patent Dispute

Versata initiated a lawsuit against SAP in 2007 in the United States District Court for the Eastern District of Texas alleging, *inter alia*, SAP's infringement of Versata's '350 patent. (Compl. ¶ 13, Doc. 1.) A jury found for Versata and against SAP by finding that (1) SAP had not proven Versata's claims of the '350 patent were invalid and (2) that SAP infringed on Versata's patent. (*Id.* ¶ 15.) SAP issued a software patch in order to eliminate future infringement, but after Versata again sued SAP for continued infringement, a second jury found that SAP continued to infringe and awarded Versata a judgment of $345 million. (*Id.* ¶ 16.) The district court upheld SAP's liability on September 9, 2011 and awarded interest and a permanent injunction against SAP's future infringement. (*Id.* ¶ 17.) On May 1, 2013, the Federal Circuit affirmed the district court's judgment on liability and damages but remanded as to the scope of the injunction. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013). On

3

May 31, 2013, SAP filed a motion for rehearing and rehearing *en banc*. (Pl.'s Opp'n Mot. Dismiss at 2, Doc. 33.)

On September 16, 2011, just seven days after the district court's finding of SAP's continued infringement, Congress enacted several reforms to the Patent Act through the AIA. *See* Pub. L. No. 112-29, § 18, 125 Stat. at 329, 331. The AIA sought, among other things, to make additional efforts to limit federal court litigation over the validity of issued patents by empowering the PTO to respond directly to the perception that many patents issued in the late 1990's and early 2000's were unpatentable. (*See* Def.'s Mem. Supp. Mot. Dismiss at 5, Doc 18 (quoting H.R. Rep. No. 106-464, at 133 (1999) (Conf. Rep.)); Intervenors' Mem. Supp. Mot. Dismiss at 2, Doc. 40.) In enacting the AIA, Congress noted that despite its multiple previous attempts to streamline issued patent review, parties continued to largely rely upon federal district courts to avoid the lengthy and costly procedure that resulted from PTO review. (Def.'s Mem. Supp. Mot. Dismiss at 5-6 (quoting H.R. Rep. No. 112-98, at 45 (2011) (Conf. Rep.)).)

The AIA created two types of PTO administrative review. First, post-grant review permits any party to request PTO review of an issued patent within the first nine months of patent issuance. *See* 35 U.S.C. §§ 321-35 (2013). Second, *inter partes* review, available only under more limited circumstances, provides for PTO review of an issued patent beyond nine months from patent issuance or after termination of post-grant review proceedings. *See id.* § 311(b). *Inter partes* review requires that a challenge to patentability must relate to a ground that could have been brought under the "prior art" provisions of 35 U.S.C. §§ 102-03.

Although post-grant review is generally available only within the first nine months, in order to address the many patents issued in the late 1990's and early 2000's that spurred Congress's concern, Congress created an exception for "business method" patents. *See* H.R.

4

Rep. No. 112-98, at 54. So long as the party seeking reexamination of the patent "has been sued for infringement of the patent or has been charged with infringement under th[e] patent," Congress would allow reexamination despite going beyond the general nine-month window. Pub. L. No. 112-29, § 18(a)(1)(B), 125 Stat. at 329.

In accordance with the recently-enacted AIA, prior to the Federal Circuit's ruling on SAP's appeal, and pursuant to the exception for "business method" patents, SAP filed for post-grant review of Versata's '350 patent, arguing that the claims constituted a "covered business method" under Section 18 of the AIA. (Compl. ¶ 20.) Versata filed a response to that petition as accorded by 35 U.S.C. § 323, in which it argued that its '350 patent was not a "covered business method" and that review of the '350 patent should be unavailable in post-grant proceedings. (*See* Def.'s Ex. B (Versata's Preliminary Response to PTAB) at ii, 10-45, 68-80, Doc. 18-2.)

On January 9, 2013, after consideration of Versata's and SAP's submissions, the PTAB ultimately granted SAP's request for post-grant review of the '350 patent under 35 U.S.C. § 324 and issued a forty-four page opinion explaining that decision. (*See* Def.'s Ex. D (Institution of Covered Business Method Review), Doc. 18-4.) The PTAB's proceedings concluded in April 2013, and a final decision had not been issued at the time of the filing of this matter. (Def.'s Mem. Supp. Mot. Dismiss at 11.) On June 11, 2013, the PTAB issued its final written decision, holding claims 17 and 26-29 of Versata's '350 patent unpatentable under Section 101. (Pl.'s Opp'n Mot. Dismiss at 4; Pl's Ex. 4 (PTAB Final Written Decision) at 2, Doc. 33-4.)

**The Current Litigation**

Versata filed the instant action on March 13, 2013, requesting this Court conduct interlocutory review of the PTAB's decision to initiate post-grant review of the '350 patent under the APA. (Compl. ¶¶ 40-57.) The Court granted SAP's Motion to Intervene under Federal Rule

5

of Civil Procedure 24(b) on June 24, 2013. (*See* Doc. 34.) Defendant's and Intervenors' instant

Motions to Dismiss argue that judicial review of the PTAB's action is precluded by the AIA and,

alternatively, that the Complaint fails to state a claim because the decision to institute post-grant

review is not a proper type of agency decision ripe for judicial consideration.

## II.   STANDARDS OF REVIEW

### A.   12(b)(1) Standard of Review

Federal Rule of Civil Procedure 12(b)(1) enables a party to move for dismissal by

challenging the Court's jurisdiction over a subject matter. Fed. R. Civ. P. 12(b)(1).  A court

must dismiss a case where the court finds subject matter jurisdiction lacking.  *Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 514 (2006); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009)

(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  A plaintiff bears the

burden of proof for establishing that federal subject matter jurisdiction is proper.  *Warren v.*

*Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012) (citing *U.S. ex. rel. Vuyyuru v.*

*Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)).

A defendant may assert that the complaint fails to allege facts upon which federal subject

matter jurisdiction could be based.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)

(quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In this scenario, a court must

assume the veracity of claims by the plaintiff.  *Id.* (quoting *Bain*, 697 F.2d at 1219).

Alternatively, a defendant may assert that federal subject matter jurisdiction does not exist

notwithstanding any specific allegations in the complaint.  *Id.*  In this situation, a court may

consider evidence outside the pleadings in order to determine whether subject matter jurisdiction

exists.  *Id.*; *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).  Accordingly, the

plaintiff's allegations will not receive a blanket presumption of truth, and a dispute of material

6

fact will not prevent a court from evaluating the claims underlying jurisdiction. *Vuyyuru*, 555 F.3d at 347.

**B.     12(b)(6) Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion should be granted where a plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotation marks omitted). The requirement for plausibility does not mandate a showing of probability but merely that there is more than a mere possibility of the defendant's unlawful acts. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon*

7

*Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court is not bound to accept as true any bare legal conclusions, whether contained in the complaint or the incorporated documents. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). The court's 12(b)(6) review involves separating factual allegations from legal conclusions, and a court must grant a 12(b)(6) motion where a complaint fails to provide sufficient non-conclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *See Burnette*, 698 F.3d at 180; *Giacomelli*, 588 F.3d at 196-97 (citing *Iqbal*, 556 U.S. at 678-79 and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)).

## III. DISCUSSION

The Court grants Defendant's and Intervenors' Motions to Dismiss for two reasons. First, the Court concludes that it lacks subject matter jurisdiction because the AIA precludes judicial review. Specifically, the AIA's express language and its detailed scheme for administrative and judicial review evince Congress's clear intent to preclude subject matter jurisdiction in federal district court. Second, as an alternative ground, the Court finds that Plaintiff fails to state a claim because the institution of post-grant review is not a final agency action for which Plaintiff lacks an alternative adequate remedy in a court. The decision to institute post-grant review is merely an initial step with any legal rights or obligations to follow at a later stage, and Plaintiff maintains the opportunity to make a direct appeal of the PTAB's decision to the Federal Circuit.

8

## A.    The AIA Precludes Judicial Review

The Court holds that it lacks subject matter jurisdiction over Plaintiff's claim for interlocutory judgment because the AIA expressly precludes judicial review of the decision to institute post-grant review proceedings.

Congress clearly indicated its intent that AIA administrative procedures should preclude district court intervention. The APA provides, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA excepts the availability of judicial review for situations where statutes preclude judicial review. 5 U.S.C. § 701(a)(1). Furthermore, judicial review of a final agency action is only authorized where "there is no other adequate remedy in a court." 5 U.S.C. § 704.

Determining whether a statute precludes judicial review requires evaluation of the statute's "express language, the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved." *See Pregis Corp. v. Kappos*, 700 F.3d 1348, 1357-58 (Fed. Cir. 2012) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)). As Plaintiff correctly asserts, "[t]here is a 'strong presumption' that Congress did not intend to prohibit all judicial review of a type of agency action." *Id.* at 1358 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 672 (1986)). However, where congressional intent is "fairly discernible in the statutory scheme," judicial review may be precluded despite this strong presumption. *Id.* (quoting *Block*, 467 U.S. at 351); *see also Block*, 467 U.S. at 349 (finding that "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded"). Courts find the requisite

9

congressional intent through "specific language or specific legislative history that is a reliable indicator of congressional intent" and by "inferences of intent drawn from the statutory scheme as a whole." *Block*, 467 U.S. at 349 (citations omitted). That congressional intent need only be "fairly discernible in the statutory scheme" means that the preclusion of judicial review need not require fulfillment of a strict "clear and convincing evidence" standard. *Id.* at 351 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157 (1970)).

There are three ways by which the AIA evinces clear congressional intent to preclude actions that seek judicial intervention under the APA for reexamination proceedings. First, the express language of the statute indicates Congress's intent to preclude judicial review of a PTAB decision to institute post-grant proceedings. Section 324(e) states, "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable." 35 U.S.C. § 324(e). Despite Plaintiff's assertion to the contrary, there is no indication that Congress intended for this language to refer only to the non-availability of direct appeal to the Federal Circuit and not to an interlocutory appeal to a district court.

Second, Chapter 32 provides detailed procedures for post-grant review and a detailed scheme for administrative and judicial review of those post-grant review proceedings. *See* 35 U.S.C. §§ 322-329 (describing post-grant review requirements as follows: filing of the initial petition (§ 322), patent owner's right to file preliminary response (§ 323), threshold requirements for institution of post-grant review (§ 324), relation to other proceedings or actions (§ 325), conduct of post-grant review (§ 326), termination of post-grant review in the event of settlement (§ 327), Board actions related to the final decision (§ 328), and right to appeal (§329)).

Third, the AIA dictates the court in which a disappointed party may appeal the PTAB decision, demonstrating Congress's intent to cabin the forums for challenging post-grant review

10

determinations. This scheme and intent precludes federal district court jurisdiction under the APA. *See Pregis*, 700 F.3d at 1359 ("That the Patent Act dictates the courts in which a disappointed applicant may appeal a patentability determination also shows Congress intended to preclude challenges to such PTO actions under the APA."); *see also* 35 U.S.C. § 141(c) ("A party to . . . a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section . . . 328(a) . . . may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."); 35 U.S.C. § 329 ("A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 328(a) may appeal the decision pursuant to sections 141 through 144. Any party to the post-grant review shall have the right to be a party to the appeal.").

Seeking judicial review of agency action, Versata appeals the decision to institute post-grant review, arguing that judicial intervention by this Court is permissible for three reasons. The first reason is that the "final and non-appealable" language of the statute demonstrates only that the decision to institute post-grant review is not directly *appealable* to the Federal Circuit; the language does not indicate that the decision is not *reviewable* by a district court under the APA. Essentially, this argument seeks to draw a distinction between an "appeal" to a court and a "review" by a court. Second, Versata contends that only the substantive decision as to whether at least one claim was more likely than not unpatentable would be immune from immediate appeal to the Federal Circuit. Thus, Versata argues, other decisions related to the process of instituting the post-grant review, including the pertinent issue of the initiation decision, are not necessarily beyond the purview of the Court's jurisdiction. Third, Versata maintains that courts interpreting the *inter partes* examination statute rejected the view that all determinations involved in a decision to award post-grant review are not reviewable by district courts.

11

Accordingly, Versata argues, the Court should construe the AIA language concerning post-grant review in a manner consistent with that of *inter partes* review and find that the language precluding appeal only addresses the final substantive determination by the PTAB.

Plaintiff's first argument fails on the plain meaning of "appeal" as it relates to judicial review of agency action. Federal courts serve as an appeal of agency action under the APA. *See Maxey v. Kadrovach*, 890 F.2d 73, 77 (8th Cir. 1999) ("A federal court is confined to the administrative record in deciding any appeal under the APA."); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("Reviews of agency action [under the APA] in the district courts must be processed as appeals."); *Cnty. of Charles Mix v. Dep't of Interior*, 799 F. Supp. 2d 1027, 1035 (D.S.D. 2011) ("This case involves an appeal under the APA."), *aff'd*, 674 F.3d 898 (8th Cir. 2012). Additionally, Defendant cites several statutory examples where the word "appealable" is equated with "review," including within the Patent Act itself. *See* 20 U.S.C. § 107d-2(a); 25 U.S.C. § 2713(c); 35 U.S.C. § 154(b)(4)(A). Despite its assertion that there is a relevant distinction here between "appeal" and "review," the cases upon which Versata relies cannot refute that this Court's interlocutory review of the PTAB's decision to institute post-grant review would serve as an appeal of that agency's decision. Thus, at least for the purposes of judicial consideration of an agency decision, no distinction is to be drawn between an "appeal" and a "review."

The Court remains unconvinced by Plaintiff's argument that the statutory language indicates that only the Director's substantive determination is final and non-appealable but that interlocutory review of other sections, namely Sections 18(d) and 321(b), is not precluded under that wording. The Court rejects such an argument in light of a complete reading of the APA and its amendments under the AIA that alter the language defining what decisions are subject to

12

appeal. Furthermore, even if the Court accepted Versata's argument that Section 324(e) is only intended to limit direct appeal of the Director's substantive determination, this cannot undermine the overarching congressional intent to streamline administrative review; minimize lengthy, costly, and protracted federal litigation; and outweigh the final section of the chapter detailing procedures for appeal. Indeed, it would be implausible to think that Congress intended Section 324(e) to be inversely implied to other parts of the act when the final section of the act, Section 329, expressly addresses the appropriate avenue for appeal. The Court finds that the ordinary reading of the statute prevails. The statutory framework makes clear that the reviewable decision is the Board's final written decision and not the Board's threshold decision to institute post-grant review.

Comparing the original statute with the AIA makes plain that Congress intended to limit the appealability of the decision to institute post-grant review related to any of the factors making up that determination. Statutory amendments are indicative of congressional intent, thus the material differences in the statutory language before and after the passage of the AIA necessitate the conclusion that Congress intended a different meaning in the amended statute. *See Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) (holding that a substantive change brought about by statutory amendment demonstrated congressional intent that the amended statute bear different meaning than the prior version (citing *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C. Cir. 1988))). The pre-AIA wording of the "final and non-appealable" provision related only to the Director's determination. *See* 35 U.S.C. § 312 (2010) ("A determination by the director *under subsection (a)* shall be final and non-appealable.") (emphasis added). Conversely, the AIA language broadens the application of "final and non-appealable" to the decision whether to institute post-grant review under the entire section. *See* 35 U.S.C.

13

§324(e) ("The determination by the Director whether to institute a post-grant review *under this section* shall be final and nonappealable.") (emphasis added). Based on the clear difference in the amended language, Congress intended that the PTAB's determinations regarding its decision to institute post-grant review would be final and nonappealable. *Cf. Nalley*, 53 F.3d at 652 ("[W]hen the change in the language of the relevant provision . . . is clear, the plain meaning of this amendment should be considered conclusive, except in the rare case in which the literal application of the statute will provide a result demonstrably at odds with congressional intent." (citing *United States v. Ron Pair Enters.*, 486 U.S. 235, 242 (1989))).

The Court also finds unpersuasive Plaintiff's third argument, which claims that courts interpreting the *inter partes* examination statute rejected the view that all determinations involved in a decision to award post-grant review are not reviewable by the courts. In *Callaway Golf Company v. Kappos*, 802 F. Supp. 2d 678 (E.D. Va. 2011), the PTO denied a petition to vacate *inter partes* reexaminations. Finding jurisdiction to review the denial, this Court explained that "[t]he statute does not divest the courts of jurisdiction over all decisions related to *inter partes* reexaminations." *Id.* at 685. Plaintiff's argument appears to be that if Section 324(e) "only exempts from judicial review the PTO's substantive determination that a reexamination application raises a substantial new question of patentability," then the Court is not divested of its ability to conduct an interlocutory review of the PTO's interpretation and application of "covered business methods." *See id.* (internal quotation marks and citation omitted).

The Court disagrees with Plaintiff's argument and declines to follow the holding in *Callaway*. In addition to the fact that decisions of district courts, even this Court, are persuasive and perhaps instructive but not binding, *Callaway* is especially distinguishable because the

14

Court's conclusion in that case relied upon a statute that differs from and predates the passage of the AIA, which controls this matter. As noted above, in *Callaway* the Court found jurisdiction to examine the decision of whether the PTO properly denied a petition to vacate an *inter partes* reexamination. *Id.* However, the statute at issue, formerly codified at Section 312, stated that the Director's determination on patenatability questions was not reviewable. *See* 35 U.S.C. § 312(c) (2010) (declaring as nonappealable the Director's determination upon reexamination as defined by § 312(a)). Accordingly, this Court held in *Callaway* that, under the controlling language, Section 312(c) could not be read to preclude review of non-substantive matters related to reexamination. 802 F. Supp. 2d at 685. While it may possible, upon first glance, to draw similarities between *Callaway*'s disposition and Versata's claim in the instant case due to the issue of a PTO decision regarding reexamination, the AIA provides the Court with substantially more context and congressional intent with which to answer the instant jurisdictional question. The current language, as modified by the AIA, in setting forth the structure and procedure of post-grant review, explicitly removes from judicial scrutiny the determination of whether to initiate the post-grant review. 35 U.S.C. § 324(e). The difference in the governing statutory language undoubtedly demonstrates Congress's intent to preclude judicial review of this non-substantive decision in a manner not evident by the language at issue in *Callaway*. Accordingly, *Callaway* is plainly distinguishable, as its conclusion, based upon issues governed by a statute lacking the language currently at issue, cannot persuade the Court to adopt Plaintiff's position.

The parties do not appear to dispute that streamlining and judicial efficiency are at least part of the congressional intent with passage of the AIA. The dispute lies at the determination of how much weight the congressional interest in efficiency deserves. Plaintiff asserts that the argument against jurisdiction is akin to immunity from judicial scrutiny in all instances. (Pl.'s

15

Opp'n Mot. Dismiss at 11.) On the contrary, the jurisdictional argument here is that the PTO's decision whether to institute post-grant review is insulated from judicial scrutiny, not that the entire process is without judicial remedy. Indeed, judicial review is provided at the Federal Circuit upon issuance of the final decision.

Plaintiff's argument that the presumption toward judicial review cannot bow to the congressional goals of efficiency and streamlining is incorrect. As stated above, the AIA sought to make additional efforts to limit federal court litigation on "the expectation that [the PTO] would serve as an effective and efficient alternative to often costly and protracted district court litigation." H.R. Rep. No. 112-98, at 45 (2011) (Conf. Rep.). As is the case with any other presumptions applicable to statutory interpretation, "[t]he presumption favoring judicial review . . . may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Block*, 467 U.S. at 349. Given the clear and undisputed indication that Congress passed the AIA with the goal of efficiency and streamlining of post-grant patent reexamination, the presumption toward judicial review is overcome here. Finding jurisdiction in the instant case would sanction a parallel court proceeding under the APA against express congressional intent made evident by the AIA's passage. Furthermore, the statute already provides for direct appeal to the Federal Circuit upon the conclusion of the post-grant review proceedings, thus providing a remedy for parties dissatisfied with the PTAB's decision.

Therefore, the Court finds Plaintiff's claims are barred for lack of subject matter jurisdiction because the language and congressional intent of recent amendments to the APA preclude the Court from exercising jurisdiction where the statutory scheme provides for administrative jurisdiction of the PTO and a direct appeal to the Federal Circuit.

16

## B. Instituting Post-Grant Review is Not Ripe for Interlocutory Review

Alternatively, if the AIA does not preclude judicial review, the Court grants Defendant's and Intervenors' Motions to Dismiss and holds that Plaintiff has failed to state a claim for interlocutory judgment because the PTO's determination to institute post-grant review is not a final agency action for which there is no adequate remedy in a court.

Whether Plaintiff has sufficiently pleaded that Defendant's decision constitutes a "final agency action" is not a question of jurisdiction but is more appropriately disposed of under Rule 12(b)(6). The APA does not confer jurisdiction upon federal courts. *See Air Courier Conference of Am. v. Am. Postal Workers' Union*, 498 U.S. 517, 523 n.3 (1991) (noting that "[t]he judicial review provisions of the APA are not jurisdictional"). "[T]he jurisdictional source for an action under the APA is [28 U.S.C. § 1331] . . . [and] [t]he judicial review provisions of the APA . . . simply provide 'a limited cause of action for parties adversely affected by agency action.'" *Lee v. U.S. Citizenship & Immigration Serv.*, 592 F.3d 612, 619 (4th Cir. 2010) (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006)).

The PTAB's decision to institute post-grant review is not made reviewable by statute; only the final written determination is made reviewable by the Federal Circuit under 35 U.S.C. § 329. "The APA authorizes interlocutory judicial review only where the agency action is made reviewable by statute or where there is a 'final agency action for which there is no other adequate remedy in a court.'" *Pregis*, 700 F.3d at 1359 (quoting 5 U.S.C. § 704). Thus, because this claim is not made reviewable by statute, for Plaintiff to state a claim under the APA, the Court considers whether (1) the decision to initiate a post-grant review amounts to a final agency action and (2) Plaintiff has other adequate remedies.

17

1.    *Final Agency Action*

Appeals under the APA are limited only to agency decisions or actions that are final. *See*

5 U.S.C. § 704. As this Court noted in *Heinl v. Godici*, 143 F. Supp. 2d 593 (E.D. Va. 2001),

"[j]udicial review prior to a final determination by an agency is likely to interfere with the

'proper functioning of [an] agency and [create] a burden for the courts." *Id.* at 597 (quoting *Fed.*

*Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 242 (1980)). The basic intent behind the rule

limiting review to final decisions with no adequate remedy in court "is to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract

disagreements over administrative policies, and to protect the agencies from judicial interference

until an administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties." *Id.* at 597 n.8 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)).

Thus, interlocutory review of the PTAB's decision to institute post-grant review would at

minimum be piecemeal and potentially unnecessary in lieu of the PTAB's ultimate decision. *Id.*

(quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) and *McGee v. United States*, 402 U.S.

479, 484 (1971)).

Two conditions must be met in order for a decision to be considered a "final agency

action" under the requirements of Section 704. First, the agency action must be the

"consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-

78 (1977). In other words, the decision "must not be of a merely tentative or interlocutory

nature." *Id.* Second, the action must result in the determination of legal rights or obligations

"from which legal consequences will flow." *Id.*

The challenged decision here—institution of a post-grant review—is not the

consummation of the PTO's decisionmaking process; rather, it is the commencement of it.  In

18

*Heinl*, this Court held that "the PTO's decision to allow reexamination of a patent is not 'final agency action' and, therefore, is not subject to judicial review at this time." 143 F. Supp. 2d at 597. A decision to conduct a reexamination is "an intermediate, indeed initial, step in the agency process to resolve the question of the validity of a patent." *Id.* The *Heinl* court drew a further analogy to the Supreme Court's decision in *Standard Oil*, noting that the decision to reexamine a patent merely initiates an administrative process analogous to the issuance of a complaint, which the Supreme Court found to be "merely 'a determination that adjudicatory proceedings will commence.'" *Id.* at 597 n.9 (quoting *Standard Oil*, 449 U.S. at 241). The present case demonstrates the logic in this analogy when one considers that opportunity remains for the patent owner to prevail even after the decision to institute post-grant review has been made. Upon consideration of supplemental information, evidence revealed through discovery, oral hearings, and written comments, the PTAB could find in the patent owner's favor. Indeed, "[a] decision confirming the patent's validity renders moot the question whether the reexamination petition should have been granted." *Id.* at 598. Furthermore, post-grant review proceedings are terminated in the event of settlement between the parties, save for the circumstance where the PTAB has already decided the merits prior to receiving the request for termination. 35 U.S.C. § 327(a). All of this indicates that the institution of post-grant review is merely an initial step. Consummation of a process does not occur where the process allows for additional events that can alter preliminary decisions.

The decision to institute post-grant review similarly does not result in the determination of legal rights or obligations "from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. The decision must have a direct and immediate effect on the party's legal rights. *See, e.g., Wollman v. Geren*, 603 F. Supp. 2d 879, 885 (E.D. Va. 2009) (stating that in order to be

19

"final," legal rights or consequences under the APA "generally have an immediate legal impact on the party"); *cf. NRDC v. EPA*, 16 F.3d 1395, 1407 (4th Cir. 1993) (asserting legal rights or obligations possess "the status of law" and create a "direct impact on the day-to-day business of [the] plaintiff"). Furthermore, the Supreme Court has long held that although the practical requirement to participate in post-grant review proceedings may be a substantial burden, "it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Standard Oil*, 449 U.S. at 242 (noting that issuance of the complaint is not a final agency action despite mandating involvement in litigation). The decision to institute post-grant review is the first step of the process wherein the legal rights and remedies will ultimately be determined.

Plaintiff presents three arguments in support of its overarching position that the PTO's construction and interpretation of the statute constitutes a final agency action ripe for judicial review. First is that the PTO's position on the statutory interpretation created a final and direct harm on Plaintiff, not merely a preliminary harm. Second, Versata claims that Defendant's adoption of this similar interpretation with respect to other post-grant reviews belies that the determination is not a final agency action. Finally, Versata argues in the alternative that even if the construction is not final, it is still reviewable as a pure question of law.

Plaintiff's argument that the statutory interpretation was an insulated and independent final action is simply contrary to precedent. As noted in *Standard Oil* and its progeny, even an authoritative statutory interpretation is not final, as it does not affect legal rights or obligations as discussed above. Even if the PTAB's interpretation were wrong, that interpretation does not bring with it a direct and immediate effect on the party's legal rights. *See NRDC v. EPA*, 16 F.3d at 1407; *Wollman*, 603 F. Supp. 2d at 885. Furthermore, the finality of the statutory

20

interpretation is only part of the inquiry. Plaintiff's argument fails to demonstrate that the interpretation results in the determination of legal rights or obligations "from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. As to Plaintiff's second argument on this issue, whether or not the PTO continues to utilize the statutory interpretation identically with respect to other parties has no bearing on the finality of the agency determination on the legal rights and obligations of Plaintiff.

In its final argument, Plaintiff attempts to circumvent the "final agency action" rule by asserting that Defendant's statutory construction is a pure question of law. However, this argument is merely an attack on the agency's jurisdiction. *See Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attacks raise[] a pure question of law.") The PTAB's interpretation of a "covered business method" patent under Section 18 does not appear to be "so at odds with the statute as to present one of the extraordinary exceptions to the finality doctrine." *Id.* Indeed, under the doctrine set forth in *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), an agency's interpretation of its own statute is likely to be given great deference by the courts. *See id.* at 844, 865-66. Certainly in this case, the congressionally designated court for making those determinations—the United States Court of Appeals for the Federal Circuit—is the appropriate venue for this appeal. Plaintiff notes that the PTO's decision is now finalized, as a result of the Final Written Decision declaring the '350 patent invalid, thereby resulting in the "consummation" of the agency's decisionmaking process. Nonetheless, the decision presented to this Court for review is the decision to institute post-grant review. The final decision is not before the Court and its mere existence solidifies the conclusion that the decision to institute was not a final action.

21

Furthermore, the occurrence of the PTO's final decision strongly supports that a direct appeal to the Federal Circuit in accordance with Section 329 is the proper venue for appealing the PTO's decisions and interpretations employed during the post-grant review.

Accordingly, the Court holds that the PTO decision to institute post-grant review is not a "final agency action" under Section 704 because it is not the consummation of the agency's decisionmaking process and did not result in the determination of legal rights or obligations from which legal consequences flow.

### 2. *The Existence of Adequate Remedies*

Adequate remedies exist for Plaintiff through direct appeal to the United States Court of Appeals for the Federal Circuit. As stated above, 35 U.S.C. § 329 provides that "[a] party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 328(a) may appeal the decision pursuant to sections 141 through 144. Any party to the post-grant review shall have the right to be a party to the appeal." *See also* 35 U.S.C. § 141(c) ("A party to . . . a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section . . . 328(a) . . . may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."). Congress expressly identified an adequate forum for providing Plaintiff a potential remedy. Section 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Congress's intent was to create a streamlined system while providing all parties with full access to judicial review. Accordingly, not only is the PTAB's decision to institute post-grant review not a "final agency action," adequate remedies also exist for Plaintiff to appeal the decision, namely an appeal to the Federal Circuit, at which time Versata may present arguments concerning the decision to initiate

22

review and, if necessary, the prudence of reviewing this decision on an appeal from the substantive and final decision.

Versata argues that the Federal Circuit's willingness to hear Versata's jurisdictional arguments is merely speculative because this is a case of first impression. Thus, Versata argues, no certainty exists as to whether the Federal Circuit would even review the decision to initiate post-grant review or even the statutory interpretation applied when making that decision. However, Versata's unease regarding the potential scope or procedure of the Federal Circuit's review does not affect whether the process is adequate. "[A] judicial remedy is adequate for purposes of 5 U.S.C. § 704 even if it does not 'provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Pregis*, 700 F.3d at 1360 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 234 (D.C. Cir. 2009)).

The Court is not persuaded that Plaintiff is being required to "bet the farm" by taking this appeal to the Federal Circuit as mandated by federal statute. Upon appeal of the PTO's determination, the Court of Appeals for the Federal Circuit shall receive "a certified list of the documents comprising the record in the Patent and Trademark Office." 35 U.S.C. § 143. The record would thus include Plaintiff's written and oral appeals to the PTAB regarding the PTAB's interpretation of "covered business method." In requiring the court to "review the decision from which an appeal is taken on the record before the [PTO]," nowhere is it indicated that the Federal Circuit will refuse to consider the entire administrative record. *See* 35 U.S.C. § 144.

Therefore, the Court grants Defendant's and Intervenors' Motions to Dismiss Versata's claims for failure to state a claim because the PTO decision to institute post-grant review is not a final agency action and an adequate remedy exists by way of direct appeal to the Federal Circuit.

23

## IV.    CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff's APA claims are barred from this Court's jurisdiction. The AIA expressly precludes judicial review of the Director's decision to institute post-grant review. Furthermore, the decision to initiate post-grant review, unlike the final decision upon the completion of the review, is not a final agency action for which Plaintiff lacks an adequate alternative remedy. Accordingly, it is hereby

**ORDERED** that Defendant's Motions to Dismiss for lack of subject matter jurisdiction and failure to state a claim (Docs. 16, 17) and Intervenors' Motion to Dismiss (Doc. 39) are **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED without prejudice.**

**IT IS SO ORDERED**.

ENTERED this _7th_ day of August, 2013.

Alexandria, Virginia
8 / 7 / 2013

/s/
Gerald Bruce Lee
United States District Judge

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,
ALEXANDRIA DIVISION**

| | |
|---|---|
| VERSATA DEVELOPMENT GROUP, INC., ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-00328 (GBL/IDD) |
| ) | |
| TERESA STANEK REA ) | |
| Acting Director of the ) | |
| United States Patent and Trademark Office, ) | |
| ) | |
|         Defendant, ) | |
| ) | |
| SAP AMERICA, INC. & SAP AG, ) | |
| ) | |
|         Defendant-Intervenors. ) | |

## <u>ORDER</u>

This matter is before the Court on Plaintiff's Rule 59(e) Motion to Alter or Amend this

Court's August 7, 2013 Order (Doc. 48).   In the August 7, 2013 Order (Doc. 46), the Court

dismissed Plaintiff's Complaint without prejudice on the grounds of lack of subject matter

jurisdiction and failure to state a claim. In the Rule 59(e) Motion presently before the Court,

Plaintiff argues that the Court should amend the August 7, 2013 Order to correct clear errors of law

and to prevent manifest injustice.   For the reasons that follow, Plaintiff's Motion to Alter or

Amend must be denied.

> Relief under Rule 59(e) is available only:
> (1) to accommodate an intervening change in controlling law; (2) to account for
> new evidence not available at trial; or (3) to correct a clear error of law or prevent
> manifest injustice.

*Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).   "Reconsideration of a judgment after

its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l*

*Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) may not be used to relitigate old matters that the court has already ruled upon. *Id.*; *see also Snyder v. Greenberg Traurig, LLP*, 2010 WL 9009363, at *1 (E.D. Va. Jan. 11, 2010), *aff'd*, 385 Fed. App'x 297 (4th Cir. 2010) ("A rule 59(e) motion is not a vehicle for a party to raise arguments or legal theories that the party could have, or actually did, assert previously.").

As stated above, Plaintiff invokes section (3) of Rule 59(e) and argues that the failure to correct alleged errors of law would result in a manifest injustice for two reasons. First, Plaintiff argues that the Court used the incorrect standard to determine congressional intent under the Administrative Procedure Act. Second, Plaintiff contends that the Court was incorrect in finding that there is no exception to the final agency action rule when a pure question of law raises an attack on an agency's jurisdiction. None of Plaintiff's arguments are sufficient to disturb the Court's Judgment.

The arguments that Plaintiff puts forth in its Motion to Alter or Amend the Judgment were the basis of Plaintiff's opposition brief (Doc. 33) to the Defendants' Motion to Dismiss, and were discussed in detail during oral arguments on Defendants' Motion, upon which the Court previously ruled in the August 7, 2013 Order. In reaching its decision in that Order, the Court considered these same arguments and rejected them, finding that the America Invents Act's express language and detailed scheme for administrative and judicial review evince Congress's clear intent to preclude subject matter jurisdiction in federal district court. Plaintiff fails to present any new arguments but instead attempt to reargue its position because it disagrees with the Court's ultimate holding.

2

Second, the Court found that as an alternative ground, Plaintiff failed to state a claim because the institution of post-grant review is not a final agency action for which Plaintiff lacks an adequate remedy in court. In its Opposition to the Motion to Dismiss (Doc. 33), Plaintiff brought forth a number of arguments including that because Defendant's statutory construction is a pure question of law, that it should be a reviewable final agency action. The Court rejected that argument and found that Plaintiff could not circumvent the final agency action rule by claiming that an issue was a pure question of law. In the current Motion, Plaintiff fails to present any new arguments but instead attempts to reargue its position because it disagrees with the Court's ultimate holding regarding final agency action. For the same reasons previously articulated by this Court, Plaintiff's present Rule 59(e) Motion to Alter or Amend the August 7, 2013 Order must be denied.   Plaintiff is advised that the Court will not consider any further motions regarding these same claims unless and until directed to do so by the Federal Circuit Court of Appeals.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 48) is **DENIED**.

**IT IS FURTHER ORDERED** that the hearing on Plaintiff's Motion currently scheduled for Friday, October 11, 2013 is **CANCELED**.

**IT IS SO ORDERED**.

ENTERED this 5th day of October 2013.

Alexandria, Virginia
10 /   5   / 2013

Judge Gerald Bruce Lee

Digitally signed by Judge Gerald Bruce Lee
DN: cn=Judge Gerald Bruce Lee, o, ou,
email=Gerald_Bruce_Lee@vaed.uscourts.
gov, c=US
Date: 2013.10.04 16:22:19 -04'00'

3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

F I L E D

JUL 1 2 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

VERSATA DEVELOPMENT CORP.,           )
                                     )
          Plaintiff,                 )
                                     )
    v.                               )          Case No. 1:13-cv-328-GBL-IDD
                                     )
TERESA STANEK REA,                   )
Acting Under Secretary of            )
Commerce for Intellectual Property and )
Acting Director of the United States )
Patent and Trademark Office,         )
                                     )
          Defendant,                 )
                                     )
SAP AMERICA & SAP AG,                )
                                     )
          Defendant-Intervenors.     )

## ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction (Doc. 16), Defendant's Motion to Dismiss for Failure to State a

Claim (Doc. 17), and Intervenors' Motion to Dismiss, also for lack of subject matter jurisdiction

(Doc. 39). For the reasons to be stated in a forthcoming Memorandum Opinion and Order,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Subject

Matter Jurisdiction (Doc. 16) and Intervenors' Motion to Dismiss (Doc. 39) are **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Failure to State a

Claim (Doc. 17) is **DENIED** as moot;

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is hereby **DISMISSED**

**without prejudice.**

This Order does not constitute a final judgment, and the time for appeal will not run until the Court issues the Memorandum Opinion and Order setting forth its reasoning.

**IT IS SO ORDERED.**

ENTERED this _12_ day of July, 2013.


Alexandria, Virginia
7 / 12 / 2013

_____/s/_____
Gerald Bruce Lee
United States District Judge

2

JA03118

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing CORRECTED

BRIEF OF PLAINTIFF-APPELLANT VERSATA DEVELOPMENT GROUP,

INC. was served on this 6th day of February, 2014 by operation of the Court's

CM/ECF system per FED. R. APP. P. 25 on the following counsel:

Dennis C. Barghaan, Jr.
Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
2100 Jamieson Avenue
Alexandria, VA 22314
*dennis.barghaan@usdoj.gov*

*Attorney for Defendant-Appellee*
*Michelle K. Lee, Deputy Director,*
*U.S. Patent and Trademark Office*

J. Michael Jakes
Michael A. Morin
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
GARRETI & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 2000 1-4413
*mike.jakes@finnegan.com*

*Attorneys for Defendants-Appellees*
*SAP America, Inc. and SAP AG*

Date: February 6, 2014                    /s/ Joel L. Thollander

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing BRIEF OF PLAINTIFF-APPELLANT VERSATA DEVELOPMENT GROUP, INC.:

1. complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). This brief contains 6,509 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii) and FED. CIR. R. 32(b). Microsoft Word 2010 was used to calculate the word count.

2. complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

February 3, 2014                    /s/ Joel L. Thollander